CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
SEP 04 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SHERLYNN EASLEY, | ) | CASE NO. 4:11CV00042 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's April 7, 2009 protectively-filed applications for a period of disability and disability insurance benefits and supplemental security income under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381, et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING plaintiff's motion for summary judgment in part, and REMANDING this action to the Commissioner for further proceedings.

In a decision dated November 16, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since July 13, 2008, her alleged date of disability onset.[1] (R. 15.) The Law Judge determined plaintiff's chronic knee

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last

1

pain and obesity were severe impairments, but that she did not suffer severe impairments of hypertension, asthma, hepatitis C, or any severe mental impairments of depression, bipolar disorder, and generalized anxiety disorder. (R. 15-17.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 17-18.) Further, the Law Judge found that plaintiff possessed the residual functional capacity ("RFC") to perform the full range of light work.[2] (R. 18-20.)

The Law Judge relied on portions of the testimony of Sandra Wells-Brown, Ph.D, a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 20-21, 44-46.) Based on this testimony, the Law Judge determined that plaintiff was able to perform her past relevant work as a fast food worker, a cleaning position, and a machine operator. (R. 20-21, 44-46). The Law Judge found that plaintiff was not disabled.

Plaintiff appealed the Law Judge's November 16, 2010 decision to the Appeals Council. (R. 1-7.) In its August 23, 2011 decision, the Appeals Council considered plaintiff's additional evidence filed while on appeal, but it found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant.

---

for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). In order to qualify for a period of disability and disability insurance benefits, plaintiff must establish that she became disabled prior to the expiration of her insured status, which is December 31, 2012. *See* 20 C.F.R. § 404.131(a); (R. 13, 178, 191.) Supplemental security income is payable the month following the month in which the application was filed. 20 C.F.R. § 416.335.

[2] Light work is defined in 20 C.F.R. § 404.1567(b) as involving lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job in this category requires a good deal of walking or standing, or when it involves sitting most of the time, some pushing and pulling of arm or leg controls.

2

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff asserts that the Law Judge improperly assessed her pain complaints and credibility, failed to properly consider the functional effects of her obesity in his RFC determination, erred in failing to find that plaintiff suffers from severe mental impairments, and that new evidence should be incorporated into the record which provides a basis to remand her case to the Commissioner. (Dkt. No. 17, at 9-19.) The undersigned will address those challenges below.

Plaintiff offers that the medical evidence of record corroborates her contention that her chronic pain causes significant functional limitations, and so she asserts that the Law Judge erred in finding her allegations less than credible. The Law Judge found that plaintiff's chronic knee pain was a severe impairment and that her medically determinable impairments could reasonably

3

be expected to cause some of her alleged symptoms. (R. 15-17, 19.) However, he concluded that plaintiff's statements concerning the intensity, persistence, and limiting effects were not credible to the extend they were inconsistent with his RFC assessment. (R. 19.)

This finding is supported by substantial evidence. In reviewing a claimant's subjective allegations of the intensity and limiting effects of her pain, the Law Judge may consider all evidence of record, including the claimant's testimony, medical records, the claimant's daily activities, the nature of her treatment, etc. 20 C.F.R. § 404.1529(c). While a claimant need not provide objective evidence in support of her subjective allegations, it is important in establishing whether her allegations are credible. *Hines v. Barnhart*, 453 F.3d 559, 564-565 (4th Cir. 2006). Here, the Law Judge pointed out that no treating physician has restricted plaintiff's functional abilities or opined that she is as limited as she alleges. (R. 20.) He pointed out that her treatment has been routine and conservative, with no surgical intervention, chronic pain management, or physical therapy.[3] (R. 20.) He also pointed out that plaintiff has maintained a full range of motion and reflexes in her knee (R. 253, 353, 384, 406, 452.), can ambulate effectively on her own,[4] can perform her activities of daily living independently (R. 134-141, 183-190.), and has never sought treatment at UVA for her knee pain despite repeated referrals (R. 277-282.). (R. 20.)

Furthermore, the Law Judge directly expressed concern with the credibility of plaintiff's statements. He pointed out that plaintiff alleged that she became unable to work because of her leg pain in July 2008, but she did not report that she had any leg pain until an emergency room visit in January 2009. (R. 20.) Before that visit, there is no evidence in the record that plaintiff

---

[3] Plaintiff did indicate to a treatment provider that she would like to receive pain management once she had insurance. (R. 596.)
[4] Plaintiff claimed at one point that she had been prescribed the use of a cane and required it to stand and walk. (R. 140.) However, there is no evidence in the record that she was prescribed the use of a cane and she does not repeat this claim elsewhere. (R. 189.)

4

ever claimed or was found to have pain in her extremities. (R. 252-255, 260-263.) Moreover, there was no evidence in the record before the Law Judge that plaintiff sought treatment for knee pain after February 2010. (R. 355-358.). In March 2010, plaintiff did not indicate that she had knee pain and was found to have no pain in her extremities. (R. 405.) In August 2010, there was no mention of any knee pain or abnormalities, and plaintiff's pain was rated a zero on the pain scale. (R. 565-567.) Additional evidence shows that plaintiff did seek treatment for joint pain in her lower leg from September through November of 2010, but after changing plaintiff's medication, her treatment provider found that her pain was a zero on the pain scale and made no other changes in her medication or treatment. (R. 593-599.) The Law Judge did not note that plaintiff has been diagnosed with fibromyalgia, which could be contributing to her pain. (R. 356, 566.) However, plaintiff is on Lyrica to treat her fibromyalgia, and it appears to have been very successful with plaintiff rarely seeking treatment for this condition and no changes in her medication. (R. 356, 405, 566, 595-599.) The Law Judge also relied on the fact that the medical imaging of record does not show structural abnormalities that would support plaintiff's allegations regarding the severity of her pain and impairment. (R. 351, 363, 453, 548.) Don Tessmann, M.D., an examining psychiatrist, also noted that, "given different resources of information, there are times when the client does not respond with complete, accurate information." (R. 270.) Accordingly, the Law Judge's findings regarding plaintiff's pain and credibility are supported by substantial evidence.

Plaintiff also asserts that the Law Judge failed to consider the impact her obesity has on her other impairments and, thereby, on her RFC. The Law Judge found plaintiff's obesity to be a severe impairment and determined at step 3 of the sequential evaluation that there was no evidence that her obesity, in combination with her other impairments, meet or equaled a listed

5

impairment. (R. 15, 17.) At step 4, the Law Judge discussed plaintiff's physical limitations, though he did not specifically discuss what limitations resulted from her obesity or what effect it had on his determination of plaintiff's residual functional capacity. (R. 18-20.) SSR 02-1p makes clear that the Law Judge is to consider a claimant's obesity at each step of the sequential evaluation and its effect on a claimant's other impairments. SSR 02-01p (2002). Plaintiff failed to point to any evidence in the record showing that her obesity caused her additional limitations beyond those indentified by the Law Judge, and the undersigned's review of the record does not disclose any treating source evidence suggesting such. Accordingly, to the extent the Commissioner failed to address any specific effect claimant's obesity had on her residual functional capacity, such error is harmless.

Plaintiff's claim of suffering severe mental impairments stands on different footing. The Law Judge found that plaintiff's mental impairments were not severe because they caused no more than mild limitations in plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace, and because plaintiff did not show she had experienced episodes of decompensation of an extended duration. (R. 15-17.)

There is no question that the Law Judge cited the correct standard for a severe impairment, namely an impairment that significantly limits an individual's ability to perform basic work activities and that imposes more than a minimal effect on the claimant's ability to function. 20 C.F.R § 404.1520(c); SSR 96-3p (1996); *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). According to the regulations, a mental impairment will be considered not severe if the claimant is found to suffer no more than mild limitations in the three articulated functional areas with no episodes of decompensation. 20 C.F.R § 404.1520a(d)(1). Here, the uncontroverted evidence is that plaintiff has been diagnosed with depressive disorder, bipolar

6

disorder, and generalized anxiety disorder, with evidence that she suffers from panic attacks, depression, and anxiety. (R. 270-271, 285, 287, 566.) She has received regular medication and counseling since August 2009 and her therapist noted that her condition had improved over the course of treatment, with a view toward formal discharge from counseling. (R. 305, 308-309, 311-312, 346, 575, 579-580.) Reports of counseling sessions and physical examinations reveal that plaintiff was generally alert, of normal mood and affect, and with no signs of mood, thought, understanding, or memory difficulties. (R. 300, 303, 306, 357, 381, 406, 510, 566, 579-580, 595, 599.)

However, there are numerous reports of plaintiff's difficulty getting along with others, depression, anxiousness, weekly panic attacks, and hallucinations during the relevant period. (R. 252, 268-271, 285, 297, 303, 313-314, 323, 325, 490.) Moreover, both plaintiff's psychiatrist and a state agency expert concluded that her mental impairments were severe. On September 14, 2009, Dr. Tessmann examined plaintiff and concluded that her condition equaled a 60 on the Global Assessment of Functioning Scale ("GAF"), indicating a moderate degree of impairment in functioning.[5] (R. 331-333.) On January 7, 2010, state agency expert Julie Jennings, Ph.D, also opined that plaintiff's affective disorders were a severe impairment that imposed moderate difficulties on plaintiff's ability to maintain concentration, persistence, or pace. (R. 194-195.) These findings stand un-rebutted in the record and were overlooked by the Law Judge in his decision and certainly not addressed by the Appeals Council on administrative review. While there is some evidence of improvement in plaintiff's mental state at points in her treatment, the

---

[5] The GAF is a numeric scale ranging from zero to one hundred used to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. 1994) (DSM–IV). A GAF of 51 to 60 indicates the individual has "[m]oderate symptoms...or moderate difficulty in social, occupational, or school functioning...." DSM–IV at 32.

7

undersigned is of the view that the Law Judge's finding that her mental impairments were not severe cannot be supported by substantial evidence. Of course, this impacts the validity of the Law Judge's subsequent findings relating to plaintiff's residual functional capacity and, ultimately, her ability to perform substantial gainful activity at the balance of the steps in the sequential evaluation. Moreover, while the ultimate outcome may or may not change, there is good cause to remand this case to the Commissioner for further proceedings, and it will be so recommended.

Plaintiff also submitted extensive new evidence while on appeal to the Appeals Council and much material for the first time in this court. She offers that this new evidence demonstrates that she suffered carpal tunnel syndrome and a moderately large central disc protrusion at L5-S1 during the relevant period, and she argues that this evidence provides an independent basis to remand the case to the Commissioner.[6] (Dkt. No. 17, at 17-18.) There was no medical evidence before the Law Judge that plaintiff had been diagnosed with carpal tunnel syndrome or with a degenerative disc disease. The proffered evidence shows that plaintiff was first diagnosed with a degenerative disc disease in February and March of 2012, more than a year after the Law Judge's decision. (Dkt. No. 17-3, at 2-6.) Plaintiff complained of back pain on a single occasion during the relevant period, on February 19, 2010, which her doctor diagnosed as fibromyalgia. (R. 355-357.) Plaintiff also never claimed that she suffered any spinal pain or impairments in her

---

[6] The Appeals Council must consider additional evidence if it is: (a) new, (b) material, and (c) relates to the period on or before the date of the Law Judge's decision. *Wilkins v. Secretary*, 953 F.2d 93, 95-96 (4th Cir. 1991). In order for remand to be granted when a plaintiff files evidence for the first time with this court, the evidence must be new and material, the plaintiff must demonstrate good cause for not submitting the evidence earlier, and the plaintiff must offer a general showing of the substance of the proffered evidence. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985), *partially superseded by statute on other grounds*, 42 U.S.C. § 405(g).

8

disability applications, disability reports, or her testimony before the Law Judge. (R. 28-46, 203, 216.)

Plaintiff first was suspected of suffering carpal tunnel syndrome in May 2011, six months after the Law Judge's decision. (Dkt. No. 17-2, at 3.) Before that date, the only evidence was that she experienced numbness or tenderness in her hands in March 2010 and April 2011 (R. 405; Dkt. No. 17-2, at 43.), and that she had aching in her joints and arms which caused her to drop things. (R. 37, 41.) None of plaintiff's doctors opined that she was limited in her use of her extremities, with relatively consistent findings that she had no defects and full range of motion. Notably, none of her most recent doctors have opined that plaintiff's diagnosis of carpal tunnel syndrome refers back to the relevant period. Neither the evidence offered to the Appeals Council nor that proffered for the first time on judicial review independently constitutes good cause to remand for further proceedings. However, because there is good cause to remand on the other grounds set forth above, plaintiff should not be prejudiced from presenting evidence of her carpal tunnel syndrome and disc impairment which may be relevant to a determination of her claims for the relevant period.

For all these reasons, it is RECOMMENDED that an Order enter DENYING the Commissioner's motion for summary judgment and GRANTING plaintiff's motion only to the extent of REMANDING this action to the Commissioner for further proceedings.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become

conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: _____
U.S. Magistrate Judge

9-4-2012
_____
Date